**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYLER HOFFMAN,<br><br>*Plaintiff*,<br><br>v.<br><br>JUNIOR SILVERIO-DELROSAR, *et al.*,<br><br>*Defendants*. | Civil Action No. 20-cv-13291<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

Presently before the Court is a motion to dismiss the Complaint filed by Defendants Uber Technologies, Inc. ("Uber") and Rasier, LLC ("Rasier"). D.E. 7. Plaintiff Tyler Hoffman filed a brief in opposition, D.E. 11, to which Defendants replied, D.E. 14. Plaintiff then filed a supplemental letter brief, D.E. 16, and Defendants filed a letter in response, D.E. 16. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.

---

[1] Defendants' brief in support of their motion to dismiss (D.E. 7-1) will be referred to as "Defs. Br."; Plaintiff's opposition brief (D.E. 11) will be referred to as "Plf. Opp."; and Defendants' reply (D.E. 14) will be referred to as "Defs. Reply."

I.     **BACKGROUND & PROCEDURAL HISTORY**

On December 23, 2018, Plaintiff and an unidentified female were Uber passengers in Defendant Junior Silverio-Delrosar's car.[2]  Compl. ¶¶ 12, 13; D.E. 1.  At the time, Silverio-Delrosar was a "professional driver" for Uber and/or Rasier.  *Id.* ¶ 3.  Rasier is a "wholly-owned subsidiary, partner, joint venture partner and/or alter ego" of Uber, and together, these Defendants operate a mobile ride-sharing company.  *Id.* ¶ 8.  Plaintiff alleges that Silverio-Delrosar was an agent or employee of Uber and/or Rasier.  *Id.* ¶ 3.

Once Plaintiff and the female arrived at their destination on December 23, they exited Silverio-Delrosar's car.  Silverio-Delrosar also exited the car and "ran up the driveway to confront" the female passenger.  *Id.* ¶ 13.  Plaintiff allegedly stood between the female and Silverio-Delrosar and "without any warning, provocation or justification," Silverio-Delrosar punched Plaintiff in the face.  *Id.* ¶¶ 14, 18.

Plaintiff filed his two-count Complaint in New Jersey state court, asserting multiple tort claims and a claim for punitive damages.  Plaintiff alleges that Uber and Rasier are vicariously liable pursuant to the doctrine of *respondeat superior* for Silverio-Delrosar's negligent conduct, and owed Plaintiff a heightened duty of care as a common carrier.  *Id.* ¶¶ 3, 16.  Plaintiff also alleges that Uber and Rasier negligently hired, trained, and supervised Silverio-Delrosar.  *Id.* ¶ 17.  After Defendants Uber and Rasier were served, they removed the matter to this Court on September 25, 2020.  D.E. 1.  It appears that Plaintiff has not yet served Silverio-Delrosar.  On October 16, 2020, Uber and Rasier filed the instant motion to dismiss.  D.E. 7.

---

[2] The facts are derived from Plaintiff's Complaint.  D.E. 1.  When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

## III. ANALYSIS

### A. *Respondeat Superior*

Defendants first contend that Plaintiff's *respondeat superior* claim fails as a matter of law because Silverio-Delrosar's intentional tortious conduct occurred outside the scope of his employment.[3] Defs. Br. at 10-16. Plaintiff counters that Defendants are assuming facts that have

---

[3] Defendants deny that an employment or agency relationship existed with Silverio-Delrosar but state that this precise issue does not need to be addressed at this time. Defendants, however, contend that the *respondeat superior* claim must still be dismissed, even assuming *arguendo* that an employment relationship existed. Defs. Br. at 7-8. Accordingly, solely for purposes of the deciding the motion, the Court assumes that an employment relationship existed.

3

not yet been decided because he pleads that Silverio-Delrosar acted negligently and does not allege that he acted with an intent to cause harm to Plaintiff. Plf. Opp. at 12. "Under *respondeat superior*, an employer can be found liable for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003).[4] To establish liability under the theory of *respondeat superior*, a plaintiff must prove "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Id.* Defendants focus on the second prong of inquiry in this matter.

The scope of employment inquiry is fact sensitive and is intended to include "those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Davis v. Devereux Found.*, 37 A.3d 469, 489 (N.J. 2012) (quoting *Di Cosala v. Kay*, 450 A.2d 508, 513 (N.J. 1982)). Whether the act is foreseeable "is a crucial inquiry." *Id.* The Restatement of Torts § 228(1) sets forth four factors that support a finding that the alleged act is within the scope of employment:

>    (a)   it is of the kind he is employed to perform;
>    (b)   it occurs substantially within the authorized time and space limits;
>    (c)   it is actuated, at least in part, by a purpose to serve the master; and
>    (d)   if force is intentionally used by the servant against another, the use of force is not unexpectable by the master

---

[4] The parties appear to assume that New Jersey law applies. Seeing no clear reason to deviate from this assumption, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

Restatement (Second) of Torts § 228(1) (1977).  An employee's act is outside the scope of employment "if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."  *Davis*, 37 A.3d at 490 (quoting Restatement of Torts § 228(2)).  Intentional torts rarely fall within the scope of employment.  *Id.*

Other courts have recently determined that Uber is not vicariously liable through *respondeat superior* for the intentional wrongful conduct of an Uber driver.  While not binding, the cases are instructive.  For example, in *Fusco v. Uber Technologies, Inc.*, No. 17-36, 2018 WL 3618232 (E.D. Pa. July 27, 2018), the plaintiff brought a *respondeat superior* claim against Uber after a driver violently attacked a passenger upon learning that the passenger wanted to travel from Philadelphia to New Jersey.  *Id.* at *1.  The Court granted Uber's motion to dismiss, in part, because the complaint failed to plead facts demonstrating that the alleged wrongful act was at least partially motivated by a purpose to serve Uber.  *Id.* at *10.  A court similarly dismissed the plaintiffs' *respondeat superior* claims against Uber in *Phillips v. Uber Technologies, Inc.*, No. 16-295, 2017 WL 2782036 (S.D.N.Y. June 14, 2017).  In *Phillips*, the Uber driver allegedly committed several torts against the passenger plaintiffs after a dispute about the fare.  *Id.* at *1-2. In dismissing the plaintiffs' vicarious liability claims, the court noted that the alleged wrongful acts occurred after the driver reached the intended destination.  The court further concluded that the alleged wrongful conduct were "not acts 'commonly done' by taxis drivers, depart[ed] heavily from methods of normal performance, and could not have been reasonably anticipated by Uber." *Id.* at *6.  Accordingly, the *Phillips* court determined that the acts were outside the scope of employment and granted Uber's motion to dismiss.  *Id.* at *7.

In this instance, Plaintiff pleads that Silvero-Delrosar was a professional driver for the rideshare service that is owned and operated by Defendants.  Compl. ¶ 3.  Defendants' rideshare

5

service transports passengers in cars for a fee. *Id.* ¶ 8. Thus, as an employee, Silverio-Delrosar was apparently authorized to perform acts to further his role in picking up passengers and driving them to a scheduled location. Punching a customer is not a foreseeable act, does not further Silverio-Delrosar's role as an employee who transports passengers, and is not the type of force usually used by a person who transports passengers in a car. Thus, viewing the allegations as a whole, the Court concludes that the alleged wrongful act here – punching Plaintiff – does not sufficiently invoke *respondeat superior*.

Plaintiff takes issue with Defendants' characterization that Silverio-Delrosar intended to punch and cause Plaintiff harm, because this allegation is not pled in the Complaint. While also not pled in the Complaint, Plaintiff seems to allude that Silverio-Delrosar meant to confront and punch the female passenger. Plf. Opp. at 7-9. But who Plaintiff intended to punch is immaterial. Plaintiff pleads that Silverio-Delrosar exited his vehicle, ran up a driveway, and without warning, threw a punch. Compl. ¶¶ 13-14. Although Plaintiff frames this conduct as negligence, the specific allegations indicate that Silverio-Delrosar acted intentionally, even if he meant to punch someone other than Plaintiff. *See Leang v. Jersey City Bd. Of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009) ("A person is subject to liability for the common law tort of assault if: '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other is thereby put in such imminent apprehension.'" (quoting *Wigginton v. Servidio*, 734 A.2d 798, 806 (N.J. App. Div. 1999))).

Plaintiff also contends that Defendants ignore his allegation that Silvero-Delrosar partners with Defendants, and is not an agent or employee. Plf. Opp at 9-12. Plaintiff, however, pleads that Defendants are vicariously liable pursuant to *respondeat superior* for Silverio-Delrosar's actions because he was an agent, servant, or employee of Uber. Compl. ¶ 10. Plaintiff does not

6

premise Defendants' vicarious liability on an alleged partnership in the Complaint. Further, Plaintiff's single reference to a partnership is conclusory; the Complaint asserts no specific factual allegations through which the Court could plausibly infer that a partnership existed. As a result, to the extent that Plaintiff's vicarious liability claims are premised on a partnership between Defendants and Silverio-Delrosar, they are dismissed as conclusory.

In sum, Plaintiff's allegations demonstrate that Silverio-Delrosar's alleged wrongful conduct occurred outside the scope of his employment with Defendants. As a result, Plaintiff fails to plead a *respondeat superior* claim as to Defendants.

### B. Negligent Hiring, Supervision, and Training

Next, Defendants maintain that Plaintiff's negligent hiring, supervision and training claim must be dismissed because the Complaint fails to include any allegations to support his claim. Defs. Br. at 16-20. To state a negligent hiring or supervision claim, a plaintiff must plead facts demonstrating the following:

> (1) [T]he employer knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of the employee, (2) the employer could reasonably have foreseen that these qualities created a risk of harm to other persons, and (3) the employer's negligence and the employee's unfitness or dangerous characteristic proximately caused the injury.

*Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 486 (D.N.J. 1997), *aff'd*, 156 F.3d 1225 (3d Cir. 1998) (citing *Johnson v. Usdin Louis Co., Inc.*, 591 A.2d 959, 961 (N.J. App. Div. 1991), *cert. denied*, 126 N.J. 386, 599 A.2d 163 (1991)). To assert a claim for negligent supervision, a plaintiff must plead that

> (1) the defendant owed a duty of care to the plaintiff to properly train its employees, (2) defendant breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff.

*Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 621 (D.N.J. 2012).

Here, the Complaint states that Uber and Rasier failed to implement or administer effective policies, screening, training, and supervision. Compl. ¶ 17. But Plaintiff provides no specific allegations to support this claim. In fact, Plaintiff does not even allege that prior to the current incident, Silverio-Delrosar was unqualified or unfit to be an Uber driver. Without sufficient factual support, Plaintiff fails to plausibly plead a negligent training, supervision, or hiring claim.

Plaintiff contends that because discovery has not occurred in this matter, he cannot determine whether Silverio-Delrosar was properly trained or had a history of previous incidents with other Uber customers. Plf. Opp. at 12-16; 18-29. As discussed, to survive a Rule 12(b)(6) motion to dismiss, Plaintiff's claims must be supported by sufficient factual allegations from the outset. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Accordingly, without the requisite factual support, Plaintiff does not adequately state a claim for negligent training, supervision or hiring. Defendants' motion is granted on these grounds.

### C. Common Carrier

Next, Defendants argue that they are not common carriers and that the heightened common carrier standard does not apply in this matter. Defs. Br. at 20-22. While New Jersey does not have a statute that codifies the common carrier standard, the New Jersey Supreme Court has consistently recognized that such a standard exists, such that a common carrier owes passengers a heightened duty of care. *Lieberman v. Port Auth. of N.Y. & N. J.*, 622 A.2d 1295, 1299 (N.J. 1993). The heightened standard requires that carriers exercise "great caution . . . , the utmost caution characteristics of very careful prudent men, or the highest possible care consistent with the nature of the undertaking." *Maison v. N.J. Transit Corp.*, 245 A.3d 536, 546 (N.J. 2021) (quoting *Harpell*

*v. Public Serv. Coordinated Transport*, 120 A.2d 43, 47 (N.J. 1956)). This includes protecting passengers from the wrongful acts of third parties. *Id.* at 547.

Defendants argue that there is no clear statutory definition of common carrier in New Jersey. Defs. Br. at 21. As a result, Defendants rely on N.J. Stat. Ann. § 27:1A-65 and the Transportation Network Company Statute (the "TNC"), § 39:5h-1, *et seq*, to demonstrate that they are not common carriers. *Id.* Among other things, the TNC sets forth permitting, insurance, and fare requirements for companies that provide prearranged rides to passengers. *See* N.J. Stat. Ann. §§ 39:5h-4; -7; -10. The TNC does not address the common carrier duty, or more generally, any tort liability for companies that provide prearranged rides. Consequently, the TNC does not seem to have an impact on the common law common carrier duty.

Next, N.J. Stat. Ann. § 27:1A-65 provides that "carrier" includes an individual or entity "operating motor buses or rail passenger service on established routes within this State or between points in this State and points in adjacent states." N.J. Stat. Ann. § 27:1A-65. In *Leiberman v. Port Authority of New York and New Jersey*, 622 A.2d 1295 (N.J. 1993), the New Jersey Supreme Court reviewed N.J. Stat. Ann. § 27:1A-65 and determined that the Port Authority Bus Terminal was not a common carrier, but rather a bus depot. Thus, the common carrier duty did not apply. *Leiberman*, 622 A.2d at 1300. Defendants rely on this statutory definition, arguing that because they are not a rail or bus system that operate fixed routes, they are not a common carrier. Defs. Br. at 21-22. However, the New Jersey Supreme Court recently determined that under the common law, a common carrier includes "entities or persons that hold themselves out to the public as being in the business of transporting passengers." *Maison*, 245 A.3d at 546. The New Jersey Supreme Court stated that the statutory definition of "carrier" that was discussed in *Lieberman*, "*generally* applies to common carriers in other statutory contexts." *Id.* at 546 n.7 (emphasis added). Thus,

9

the New Jersey Supreme Court did not limit the common law duty to a transportation company that satisfies the requirements N.J. Stat. Ann. § 27:1A-65.  Moreover, courts have applied the common law duty to transportation other than rails or buses.  *See Ricci v. Am. Airlines*, 544 A.2d 428, 430-31 (N.J. App. Div. 1988) (applying common carrier standard to commercial airline).  Here, Plaintiff plausibly alleged that Defendants are in the business of transporting passengers.  The fact that Defendants do not operate a bus or railroad is not dispositive.

      Defendants also maintain that they do not transport passengers.  Instead, they contend that they are a technology company that has developed mobile applications "that act as connecting mechanisms between riders and transportation providers."  Defs. Br. at 22.  This argument has been rejected by other courts.  For example, in *Doe v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774 (N.D. Cal. 2016), the Court rejected Uber's argument that it was a "broker" of transportation services.  The Court instead concluded that Uber was a common carrier, under the relevant California statute, because "Uber's services are available to the general public and that Uber charges customers standardized fees for car rides."  *Id.* at 786.  Again, while not dispositive, this case is instructive.

      As a result, given the early stage of this litigation, the Court will not dismiss Plaintiff's common carrier claim.  Moreover, viewing the Complaint in a light most favorable to Plaintiff, which the Court must do in deciding this motion to dismiss, the Court concludes that Plaintiff sufficiently pleads that Defendants are a common carrier because they employ drivers who transport passengers for a fee.  Compl. ¶ 8.

      Next, Defendants maintain that even if they are common carriers, their heightened duty of care had ended when the alleged wrongful conduct occurred.  Defs. Br. at 23.  Defendants rely on *Mandal v. Port Authority of New York and New Jersey*, No. A-0100-10T3, 2013 WL 1337397

(N.J. Sup. Ct. Apr. 4, 2013) to make this argument. In *Mandal*, the court concluded that the common carrier duty did not apply to a passenger who was injured while walking in a corridor to her train. The court explained that "[i]f plaintiff was injured while riding a train or while embarking or disembarking from a train, the common-carrier standard of care might apply," but because the accident occurred while the plaintiff was walking to the train, the Port Authority owed the plaintiff a different level of care. *Id.* at *2-3. Based on *Mandal*, Defendants argue that by the time the wrongful act occurred, the carrier-passenger relationship had ended, and the common carrier duty had expired. Defs. Br. at 23.

The Court will not conclude at the motion to dismiss stage that Plaintiff's Uber ride was "over" – as a matter of law - when he was allegedly punched. Instead, Plaintiff should be afforded with the opportunity to conduct discovery as to precisely when an Uber ride ends and if it had ended here. As a result, Defendants' motion to dismiss is denied on these grounds.

### D. Punitive Damages

Finally, Defendants maintain that Plaintiff's claim for punitive damages must be dismissed as to them because Plaintiff's request for punitive damages is not based on intentional or willful conduct. Defs. Br. at 24-27. New Jersey's Punitive Damages Act permits an award of punitive damages when a plaintiff can prove, by clear and convincing evidence, that his harm was caused by the defendant and that the defendant has acted with "actual malice," or a "wanton and willful disregard of persons who foreseeably might be harmed" by their "acts or omissions." *See* N.J. Stat. Ann. § 2A:15-5.12. Generally, an award of punitive damages requires a finding of a high degree of culpability. "Mere negligence is not sufficient." *See Sandler v. Lawn-A-Mat Chem. & Equip. Corp.*, 358 A.2d 805, 811 (N.J. App. Div. 1976) (citations omitted). Plaintiff does not plead any facts demonstrating that Defendants acted with actual malice or with wanton and willful

11

disregard of Plaintiff. Accordingly, Plaintiff's claims do not appear to support any award of punitive damages as to Defendants. Defendants' motion is granted on these grounds.

## IV. CONCLUSION

Defendants' motion to dismiss (D.E. 7) is **GRANTED in part** and **DENIED in part**. Dismissal is without prejudice. Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiff does not file an amended pleading within that time, the claims dismissed herein will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: June 15, 2021

_____<br>John Michael Vazquez, U.S.D.J.