**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TYLER HOFFMAN,<br><br>    *Plaintiff*,<br><br>v.<br><br>JUNIOR SILVERIO-DELROSAR, *et al.*,<br><br>    *Defendants*. | Civil Action No. 20-cv-13291<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

Presently before the Court is a motion to dismiss the Amended Complaint filed by Defendants Uber Technologies, Inc. ("Uber") and Rasier, LLC ("Rasier") (collectively "Defendants"). D.E. 21. Plaintiff Tyler Hoffman filed a brief in opposition, D.E. 25, to which Defendants replied, D.E. 27. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND & PROCEDURAL HISTORY**

On December 23, 2018, Plaintiff and an unidentified female were Uber passengers in Defendant Junior Silverio-Delrosar's car.[2] Am. Compl., Count One, ¶¶ 9-10; D.E. 19. Silverio-

---

[1] Defendants' brief in support of their motion to dismiss (D.E. 21-1) will be referred to as "Defs. Br."; Plaintiff's opposition brief (D.E. 25) will be referred to as "Plf. Opp."; and Defendants' reply (D.E. 27) will be referred to as "Defs. Reply." Plaintiff also filed an Appendix to his opposition brief, which includes the tables of contents and authorities for his opposition brief. D.E. 26.

[2] The facts are derived from Plaintiff's Amended Complaint. D.E. 19. When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Delrosar was an Uber driver. *Id.* ¶ 3. Rasier is a "wholly-owned subsidiary, partner, joint venture partner and/or alter ego" of Uber, and together, Uber and Rasier operate a mobile ride-sharing company. *Id.* ¶ 5. Plaintiff alleges that Silverio-Delrosar was an agent, employee, or apparent employee of Uber and/or Rasier. *Id.* ¶ 8.

During the ride on December 23, Silverio-Delrosar allegedly felt that the female passenger was being "unruly or uncooperative," and Silverio-Delrosar became angry. *Id.* ¶ 11. Once Plaintiff and the female arrived at their destination, they exited Silverio-Delrosar's car. Silverio-Delrosar also exited the car and "ran up the driveway to confront" the female passenger. *Id.* ¶ 14. Plaintiff allegedly stood between the female and Silverio-Delrosar; Silverio-Delrosar then punched Plaintiff in the face. *Id.* ¶ 15.

Plaintiff filed his Complaint in New Jersey state court, asserting tort claims and a claim for punitive damages. After Defendants Uber and Rasier were served, they removed the matter to this Court on September 25, 2020.[3] D.E. 1. On October 16, 2020, Defendants filed a motion to dismiss, D.E. 7, which the Court partially granted, D.E. 17, 18. The Court denied Defendants' motion with respect to Plaintiff's common carrier claim. D.E. 17. The Court, however, granted Defendants' motion as to Plaintiff's *respondeat superior*; negligent training, hiring and supervision; and punitive damages claims pursuant to Federal Rule of Civil Procedure 12(b)(6). These claims were

---

[3] It is not clear if Plaintiff served Silverio-Delrosar. Plaintiff states that he filed an affidavit of service as to Silverio-Delrosar in state court on September 20, 2020, before this matter was removed. Plf. Opp. at ii n.1. Defendants, however, do not indicate that Silverio-Delrosar was served in their Notice of Removal or that they obtained Silverio-Delrosar's consent to remove the matter. Moreover, no attorney has entered an appearance on Silverio-Delrosar's behalf, nor has Silverio-Delrosar indicated that he wishes to defend himself in this matter *pro se*. Regardless, Silverio-Delrosar did not file a motion to dismiss, nor has he joined in Uber and Rasier's motion. As a result, the Court only addresses dismissal as to Uber and Rasier.

dismissed without prejudice and the Court provided Plaintiff with leave to file an amended complaint. *Id.*

Plaintiff filed his Amended Complaint on July 15, 2021. The Amended Complaint includes additional factual support and a new cause of action. The Court discusses the new factual allegations below. As for Plaintiff's causes of action, in Count One of the Amended Complaint, Plaintiff alleges that Defendants are vicariously liable for Silverio-Delrosar's negligent conduct pursuant to the doctrine of *respondeat superior* and owed Plaintiff a heightened duty of care as a common carrier. Am. Compl., Count One ¶¶ 37-39. Plaintiff also alleges that Defendants are liable for the negligent hiring, supervision, and training of Silverio-Delrosar. *Id.* ¶ 41-43. In Count Two, Plaintiff asserts a new claim for fraudulent inducement based on Uber's public statements about safety. *Id.*, Count Two, ¶¶ 1-11. Plaintiff seeks punitive damages as to Counts One and Two of the Amended Complaint. On July 29, 2021, Defendants filed the instant motion, seeking to dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6). D.E. 21.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district

3

courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

## III.  ANALYSIS

### A.  *Respondeat Superior*

In its prior opinion, the Court dismissed Plaintiff's *respondeat superior* claim because the alleged tortious conduct occurred outside the scope of Silverio-Delrosar's employment. MTD Opinion at 3-7. Defendants now contend that Plaintiff's *respondeat superior* claim still fails as a matter of law because the Amended Complaint does not change the fact that Silverio-Delrosar's intentional tortious conduct occurred outside the scope of his employment.[4] Defs. Br. at 12-14. Plaintiff contends that he "attempted to cure" these deficiencies "by alleging more detailed facts" in the Amended Complaint. Plf. Opp. at 17. "Under *respondeat superior*, an employer can be found liable for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003).[5] To establish liability under the theory of *respondeat*

---

[4] Defendants deny that there was employment or agency relationship with Silverio-Delrosar. Defs. Br. at 19-20. Defendants, however, contend that the *respondeat superior* claim must still be dismissed, even assuming *arguendo* that an employment relationship existed. *See id.* at 14. Accordingly, solely for purposes of the deciding the motion, the Court assumes that an employment relationship existed.

[5] The parties appear to assume that New Jersey law applies. Seeing no clear reason to deviate from this assumption, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will

*superior*, a plaintiff must prove "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Id.* Defendants focus on the second prong of inquiry.

The scope of employment inquiry is fact sensitive and is intended to include "those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Davis v. Devereux Found.*, 37 A.3d 469, 489 (N.J. 2012) (quoting *Di Cosala v. Kay*, 450 A.2d 508, 513 (N.J. 1982)). Whether the act is foreseeable "is a crucial inquiry." *Id.* The Restatement of Torts § 228(1) sets forth four factors that support a finding that an alleged act is within the scope of employment:

> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master; and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable *by the master*

Restatement (Second) of Torts § 228(1) (1977) (emphasis added). An employee's act is outside the scope of employment "if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Davis*, 37 A.3d at 490 (quoting Restatement of Torts § 228(2)). Intentional torts rarely fall within the scope of employment. *Id.*

Plaintiff now pleads that when exiting the vehicle at the drop-off location, Silverio-Delrosar "believed that he was representing, acting on behalf of and furthering the interests of

---

assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

[Defendants]." Am. Compl., Count One, ¶ 11.  Plaintiff further alleges that Silverio-Delrosar "did what he believed was appropriate as an Uber driver under the circumstances." *Id.*  Finally, Plaintiff alleges that when the alleged wrongful conduct occurred, Silverio-Delrosar was still on the Uber app. *Id.* ¶ 12.  Plaintiff's new allegations suggest that Silverio-Delrosar intended to help Uber by punching an unruly passenger and that it occurred during the ride.  Moreover, Silverio-Delrosar's personal belief or intent that he was helping Defendants does not change the fact that punching a customer was not foreseeable to Defendants.[6]  As previously explained, "[p]unching a customer is not a foreseeable act, does not further Silverio-Delrosar's role as an employee who transports passengers, and is not the type of force usually used by a person who transports passengers in a car." MTD Opinion at 6.  Viewing the allegations as a whole, the Court concludes that the alleged wrongful act here – punching Plaintiff – does not sufficiently invoke *respondeat superior*.  *See Davis*, 37 A.3d at 490 (explaining that foreseeability is critical to scope of employment test); *see also Roe ex rel. Roe v. Rutgers, State Univ. of N.J.*, No. 13-1762, 2013 WL 3446456, at *5 (D.N.J. July 13, 2013) (concluding that alleged wrongdoing by professor, including an assault, "were not foreseeable and could not reasonably be actuated by a purpose of serving Rutgers").  Plaintiff's new allegation, assuming that it plausibly pled, that Silverio-Delrosar believed his conduct would be sanctioned by Uber does not change the analysis.  Consequently, Plaintiff's allegations demonstrate that Silverio-Delrosar's alleged intentional and wrongful conduct occurred outside the scope of his employment with Defendants.

---

[6] Plaintiff's basis for alleging Silverio-Delsrosar's state of mind is unclear to the Court. Other than Plaintiff's bald assertions as to what Silverio-Delrosar was thinking, Plaintiff fails to provide any supporting allegations, such as comments by Silverio-Delrosar.  Defendants, however, do not raise this issue in their motion to dismiss so the Court notes, but does not address, the issue at this time.

In sum, Plaintiff fails to plead a *respondeat superior* claim as to Defendants and Defendants' motion is granted on these grounds. Plaintiff's *respondeat superior* claim is dismissed.

### B. Negligent Hiring, Supervision, and Training

Next, Defendants maintain that Plaintiff's negligent hiring, supervision and training claim must be dismissed because the claims are conclusory.[7] Defs. Br. at 21-23. To state a negligent hiring claim, a plaintiff must plead facts demonstrating the following:

> (1) the employer knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons, and (2) that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury.

*G.A.-H v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019) (quoting *Di Cosala*, 450 A.2d at 516) (internal quotation marks omitted).

The Court previously dismissed Plaintiff's negligent hiring claim as conclusory. MTD Opinion at 8. In the Amended Complaint, Plaintiff asserts that Defendants knew or should have known that Silverio-Delrosar had violent tendencies prior to the occurrence and had exhibited these violent tendencies. Am. Compl., Count One, ¶ 36. The Amended Complaint also includes allegations suggesting that Uber's hiring procedures were deficient, for example, that Defendants do not screen or evaluate drivers "to ensure that they are emotionally equipped to transport passengers safely." *See id.* ¶ 29. But Plaintiff fails to provide any allegations demonstrating how Defendants knew or should have known about Silverio-Delrosar's violent tendencies at the time

---

[7] "Unlike *respondeat superior*, negligent hiring, supervision, and training are not forms of vicarious liability and are based on the direct fault of an employer." *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019).

of hiring.[8]  *See Harrison v. N.J. State Police*, No. 18-16358, 2020 WL 1041355, at *2 (D.N.J. Mar. 3, 2020) (dismissing negligent hiring claim because nothing indicates that the defendants had a reason to know that certain police officers "posed a risk before their hiring").  Thus, Plaintiff fails to state a negligent hiring claim.  Defendants' motion is granted on these grounds, and Plaintiff's negligent hiring claim is dismissed.

> To assert a claim for negligent training or supervision, a plaintiff must plead that
>
>> (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of materializes and causes the plaintiff's damages"

*G.A.-H*, 210 A.3d at 916 (quoting *Di Cosala*, 450 A.2d at 516).  Plaintiff alleges that Defendants owed Plaintiff a duty of care to train Silverio-Delrosar.  Am. Compl., Count One, ¶ 23.  Plaintiff also pleads that Defendants failed to provide any training on a host of issues, including how to ensure safe pickup and drop-off of passengers.  Instead, Defendants simply referred drivers to the Uber website, "which did not provide any proper training materials or instruction whatsoever . . . for the safe pickup and drop-off of passengers." *Id.* ¶¶ 19-20.  Plaintiff further alleges that Uber

---

[8] Defendants ask this Court to consider the transcript from Silverio-Delrosar's plea hearing for criminal charges that resulted from the assault at issue here. Defs. Br. at 21. Defendants explain that at this hearing, the judge stated that Silverio-Delrosar led "a law-abiding life for a substantial period of time." *Id.* Defendants contend that this demonstrates that Silverio-Delrosar was fit to be an Uber driver. *Id.* In deciding a Rule 12(b)(6) motion, a court ordinarily considers only the factual allegations, exhibits attached to the complaint, and matters of public record. *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Judicial proceedings are matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court may also "take judicial notice of another court's opinion—not for the truth of the matter asserted, but for the existence of the opinion." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). Accordingly, the Court cannot use the transcript to add factual content that is not otherwise set forth in the Amended Complaint. But even if the Court were to consider the state judge's statement that Silverio-Delrosar led a law-abiding life until the incident, it would not necessarily negate Plaintiff's allegations Silverio-Delrosar had violent tendencies.

provides no training as to how drivers should deal with unruly passengers, including de-escalation skills. *Id.* ¶ 22.

Plaintiff adds that Uber continued its deficient training procedures despite past incidents of assaults or other inappropriate behavior from other Uber drivers that were directed at passengers. *Id.* ¶ 34. Plaintiff alleges that Uber knew this lack of training and supervision "would result in a statistical likelihood that a percentage of Uber passengers would become injured as a result of violent acts by Uber drivers." *Id.* ¶ 35. Finally, Plaintiff indicates that Silverio-Delrosar exhibited violent or aggressive tendencies towards other Uber passengers and that prior to the incident at issue here, passengers had made complaints about Silverio-Delrosar to Uber. Plaintiff concludes that had Defendants taken appropriate action, through training, retention, and management, Defendants could have prevented Plaintiff's injuries. *Id.* ¶¶ 36, 38, 41.

Defendants essentially argue that Plaintiff's allegations are too generalized and fail to allege causation. Defs. Br. at 22; Defs. Reply at 4-5. The Court disagrees. The Amended Complaint sufficiently sets forth specific training that Defendants could have provided, explains that Defendants should have been aware of the need to train Silverio-Delrosar given his prior incidents with other passengers, and that Defendants' failure to train or supervise Silverio-Delrosar was a proximate cause of Plaintiff's injuries.

Defendants also contend that Plaintiff fails to establish that Defendants owed any duty to train Plaintiff. Defs. Br. at 22. Because these are negligence claims, Plaintiff must plead facts establishing a *prima facie* negligence claim, including that Defendants owed a duty of care, in addition to the elements addressed above. *Stroby v. Egg Harbor Township*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010). Under New Jersey law, employers may have a duty to train and supervise employees. *See Tobia v. Cooper Hosp. Univ. Med. Ctr.*, 643 A.2d 1, 6 (N.J. 1994). Moreover, as

9

discussed, Plaintiff alleges that Defendants breached their duty to Plaintiff by failing to train Silverio-Delrosar. Am. Compl., Count One, ¶ 23.  In sum, Plaintiff sufficiently pleads a *prima facie* negligence claim based on Defendants' failure to train and supervise Silverio-Delrosar. Defendants' motion is denied on these grounds.

### C. Common Carrier

In its earlier opinion, the Court explained that it would not decide whether the common carrier standard applied at the motion to dismiss stage. MTD Opinion at 8-11. Despite this analysis, Defendants again argue that they are not common carriers. Defs. Br. at 20-22. As previously discussed, the New Jersey Supreme Court has consistently recognized that a common carrier owes passengers a heightened duty of care. *Lieberman v. Port Auth. of N.Y. & N. J.*, 622 A.2d 1295, 1299 (N.J. 1993). The heightened standard requires that carriers exercise "great caution . . . , the utmost caution characteristics of very careful prudent men, or the highest possible care consistent with the nature of the undertaking." *Maison v. N.J. Transit Corp.*, 245 A.3d 536, 546 (N.J. 2021) (quoting *Harpell v. Public Serv. Coordinated Transport*, 120 A.2d 43, 47 (N.J. 1956)). This includes protecting passengers from the wrongful acts of third parties. *Id.* at 547.

Defendants again rely on the Transportation Network Company Statute (the "TNC"), § 39:5h-1, *et seq*, to demonstrate that they are not common carriers. Defs. Br. at 22-28. Defendants now argue that by excluding common carriers from the TNC statute, the New Jersey Legislature's intent "was to ensure that TNCs were not designated as common carriers." Defs. Br. at 25. Defendants' new argument does not change the Court's conclusion. As previously discussed, "[t]he TNC does not address the common carrier duty, or more generally, any tort liability for companies that provide prearranged rides. Consequently, the TNC does not seem to have an impact on the common law common carrier duty." MTD Opinion at 9. And the Court will not

determine whether the common carrier standard applies to Defendants due to an alleged intentional omission in the TNC statute at the motion to dismiss stage.

Next, Defendants maintain that they are not common carriers because the Uber App is not available to the public. Defendants also make several factual arguments about how passengers summon an Uber versus a taxi or public transportation and highlight other differences between the forms of transportation. Defs. Br. at 26. While true that Uber is only accessible to registered users, any person with a smart phone can download the app. Moreover, the specific way individuals use Uber in comparison to a taxi, for example, does not necessarily impact whether Defendants "hold themselves out to the public as being in the business of transporting passengers." *See Maison*, 245 A.3d at 546 (discussing the common law common carrier standard). Defendants' arguments are premised on factual determinations that are not appropriate for a motion to dismiss. As previously discussed, the Court will not conclude at the motion to dismiss stage, that Defendants are not common carriers as a matter of law. Defendants' motion to dismiss is denied on these grounds.

### D. Fraudulent Inducement

Finally, Defendants maintain that Count Two, Plaintiff's fraudulent inducement claim, must be dismissed. Defs. Br. at 29. Plaintiff does not address this argument. To establish a claim for fraudulent inducement, a party must show the following: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 303–04 (D.N.J. 2020). Count Two pertains to Uber's public claims about safety. *See* Am. Compl., Count Two, ¶¶ 1-7. Plaintiff, however, fails to allege that he relied on any of these statements regarding safety or that they had any impact on his decision to use Uber. Thus, without any allegations establishing Plaintiff's

11

reliance, Plaintiff fails to state a fraudulent inducement claim.[9]  Therefore, Defendants' motion is granted on these grounds and Count Two is dismissed.

    **IV.    CONCLUSION**

For the reasons stated above, and for good cause shown,

**IT IS** on this 23rd day of December, 2021,

**ORDERED** that Defendants' motion to dismiss (D.E. 21) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendants' motion is **GRANTED** as to the *respondeat superior*, negligent hiring, and fraudulent inducement claims.  These claims are dismissed; and it is further

**ORDERED** that dismissal is without prejudice.  Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein.  If Plaintiff does not file an amended pleading within that time, the claims dismissed herein will be dismissed with prejudice; and it is further

**ORDERED** that Defendants' motion is otherwise **DENIED**.

                                                           */s/ John Michael Vazquez*
                                                           John Michael Vazquez, U.S.D.J.

---

[9] Defendants also argue that Plaintiff's claim for punitive damages in Count Two fails as a matter of law. Defs. Br. at 30-33.  Because Count Two is dismissed for failure to state a claim, the Court need not address whether punitive damages may be available to Plaintiff through Count Two.  The Court, therefore, will not consider the merits of the parties' arguments as to punitive damages.